UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C & L WARD BROS., CO.,

                Plaintiff,                    Case No. 11-cv-14773
                                          HON. GEORGE CARAM STEEH

vs.

OUTSOURCE SOLUTIONS, INC., et al.,

                Defendants.

_____/

<u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT</u>

I.     <u>Introduction</u>

Plaintiff, C & L Ward Bros. Co., filed the instant class action lawsuit against defendants Outsource Solutions Inc. (Outsource), Yoursource Management Group, Inc. (Yoursource), Todd Lancaster, Robert Handley, Steve Chargo, and John Doe Corporations. Plaintiff alleges that defendants overcharged it under the terms of the parties' agreement and retained the overcharged revenue for corporate and personal use.  Plaintiff alleges state law claims of fraud in the inducement, conversion and negligence as well as claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 <u>et seq</u>.

Presently before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue that the parties' agreement bars plaintiff's tort and RICO claims.  Because plaintiff expressly alleged that it entered into an agreement and that the amount to be charged for defendants' payroll tax services was governed by that agreement, plaintiff's RICO and tort claims fail as a matter of law.  Defendants are

-1-

therefore entitled to the relief sought in the present motion and plaintiff's complaint is dismissed.

     II.    <u>Factual Background</u>

Ward is a Michigan corporation in the business of selling and installing windows, doors, and siding for residential dwellings.  Outsource is a dissolved Michigan corporation that is an employer organization business providing payroll services, tax services, benefits administration, and human resource services to its clients.  Defendant Todd Lancaster was the Chief Executive Officer of Outsource before it dissolved in February of 2011 and is now the Chief Executive Officer of YourSource.  Both defendants Robert Handley and Steve Chargo are former Chief Financial Officers for YourSource.

On or about May 23, 2003, plaintiff and Outsource entered into a co-employment agreement whereby Outsource agreed to handle various human resource and tax-related services for plaintiff.  The agreement was effective July 1, 2003 for a term of one year with automatic renewal for one year periods until terminated by either party upon thirty days written notice.  Outsource dissolved on February 1, 2011, however service to plaintiff pursuant to the co-employment agreement continued uninterrupted through defendant YourSource and/or defendant Todd Lancaster through September of 2011.

Part of defendants' responsibility under the agreement was to pay state and federal unemployment taxes on behalf of plaintiff as part of its payroll service.  Defendants maintain that plaintiff agreed to pay 10.5% of plaintiff's gross payroll for the tax related services plus an additional fee for other payroll/human resource administration services equal to 1.65% of plaintiff's gross payroll.

Conversely, plaintiff alleges that prior to entering into the co-employment agreement, defendants provided Patrick L. Ward, plaintiff's President, with a proposal showing what plaintiff's human resource costs would be if it entered into the co-employment agreement. Plaintiff maintains that the proposal and verbal representations were that plaintiff would save $12,709.00 by using defendants' services instead of paying an employee to handle the human resources matters.   Plaintiff maintains that plaintiff's payroll taxes would continue at a rate of 10.5% of gross payroll and that the only new expense would be defendants' administrative fee, equaling 1.65% of plaintiff's gross payroll.  During an April or May 2003 meeting between defendant Lancaster, Patrick Ward and Ronald Ward, Lancaster represented that the total fee for all Outsource services was 1.65% of total payroll and not one penny more.  Nowhere in the proposal does it state that the 10.5% was a flat fee as defendants claim.  Rather the proposal states that plaintiff's "Payroll Taxes on Gross Payroll" were to be exactly the same under Outsource's administration as they were under Ward's administration, in other words, the flat fee was nothing more than actual payroll taxes.

Plaintiff maintains that it first learned there might be a problem with defendants' billing practices when it was contacted by a former client of Outsource and was advised that it should investigate what it was being charged by defendants for payroll taxes.  After Patrick Ward conducted an investigation, he met with defendants Lancaster and Chargo on February 4, 2011 and confronted them with plaintiff's accountant's summary report, which explained that defendants had overcharged plaintiff in the amount of $458,183.16. According to plaintiff, Lancaster and Chargo admitted that plaintiff was overcharged and stated that the extra money was used for operating expenses, administrative fees, and/or

the Michigan business tax.    Lancaster and Chargo deny admitting plaintiff was
overcharged.

Plaintiff argues that defendants fraudulently concealed their wrongful overcharging
by lumping legitimate tax payments of various kinds together with the fraudulent
overcharges and identifying them only as "payroll taxes" on invoices that defendants sent
to plaintiff to ensure that no line items on defendants' invoices raised a red flag.

III.    Law & Analysis

A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as
to whether the plaintiff has stated a claim upon which relief may be granted. See Fed. R.
Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain
statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41,
47 (1957).  Even though the complaint need not contain "detailed" factual allegations, its
"factual allegations must be enough to raise a right to relief above the speculative level on
the assumption that all of the allegations in the complaint are true."  Ass'n of Cleveland Fire
Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 550
U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations
of the complaint as true, and determine whether plaintiff's factual allegations present
plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief
must provide "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." Id. (citations and quotations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining on whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. Amini v. Oberlin College, 259 F. 3d 493, 502 (6th Cir. 2001).  Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Id.

B.   Tort Claims

Defendants argue that plaintiff's tort claims of fraud in the inducement, conversion and negligence fail because any duty owed to plaintiff arose solely out of the parties' contractual relationship, and Michigan law precludes tort actions where a contractual agreement exists.  See Sherman v. Sea Ray Boats, Inc., 251 Mich. App. 41, 52; 649 N.W.2d 783 (2002).  "Michigan case law expressly provides that an action in tort may not

be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." Id.; see also, Fultz v. Union-Commerce Assocs., 470 Mich. 460, 466; 683 N.W.2d 587 (2004).

Confronted with controlling precedent that the written agreement between the parties bars plaintiff's tort claims, plaintiff attempts to re-invent its allegations by denying that it ever alleged that a valid, enforceable agreement exists. Plaintiff maintains that the co-employment agreement states in relevant part that plaintiff would pay defendants "a service fee equal to the calculation as shown on Exhibit D, which is attached and made part of this Agreement . . . ." Compl., Ex. A. Plaintiff now asserts that exhibit D was never attached to the co-employment agreement. However, plaintiff expressly alleged that it entered into an agreement and the amount defendants would charge was governed by the parties' agreement and that "the agreement limited defendants' compensation to 1.65% of the gross payroll." Plaintiff further alleged in the complaint that "[t]he Agreement was effective July 1, 2003 . . . [and] continued in full force and effect until September 2011, when Ward terminated the Agreement." Compl. at ¶ ¶ 11-12.

Under Michigan's separate and distinct duty doctrine, a plaintiff may not assert a fraudulent inducement claim based on alleged pre-contractual misrepresentations that are "interwoven with" the parties' contract, only fraud in the inducement claims based on "extraneous" misrepresentations survive under the rule. See Huron Tool and Eng'g v. Precision Consult. Serv. Co., 209 Mich. App. 365, 372-73; 532 N.W.2d 541 (1995). "[A] claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute a contract or warranty terms subsequently breached by the seller." Id. at 375.

While plaintiff responds that the co-employment agreement is unenforceable, plaintiff alleged in the complaint that "[o]n May 23, 2003, Ward and Outsource entered into a co-employment agreement. . . [and] the agreement continued in full force and effect until September 2011." The alleged misrepresentation concerns the rate at which Outsource would bill plaintiff for its services. Specifically, plaintiff contends that no additional charges beyond the 1.65% of gross payroll charges "were authorized by the agreement." Plaintiff's fraud in the inducement claim involves an alleged misrepresentation that is "interwoven with" the parties' agreement, therefore it is barred by the parties' agreement.

Similarly, in order for plaintiff's conversion claim to survive, plaintiff must allege a duty separate and distinct from the contract's duties. Plaintiff alleges that defendants "wrongfully exerted dominion over Ward's funds . . . by overcharging Ward for 'payroll taxes' as set forth in the Complaint." Thus, the only duty that plaintiff identifies is the duty to not overcharge for defendants' services, a duty that arises under the parties' agreement, which set forth the agreed upon rate that would be charged by defendants. See Hamilton v. Nochimson, No. 09-13366, 2010 U.S. Dist. LEXIS 17942, at *6-8 (E.D. Mich. March 1, 2010) (dismissing tort claims of breach of fiduciary duty and conversion because the claims failed to allege a duty separate and distinct from the parties' contractual duties); see also Wrench LLC v. Taco Bell Corp., No. 1:98-cv-45, 2003 WL 21653410, at *2 (W.D. Mich. May 1, 2003).

Likewise, plaintiff's negligence claim fails because plaintiff does not identify a duty separate and distinct from the parties' agreement. Plaintiff alleges that defendants were "negligent in that they overcharged Ward in excess of Five Hundred Thousand ($500,000.00) Dollars for 'payroll taxes' . . . ." Compl. at ¶ 129. Defendants' alleged

overcharging plaintiff for tax related services was a breach of the parties' contract, and thus

was not a violation of any duty that was "separate and distinct" from the parties' contractual

obligations.  Thus, plaintiff's negligence claim fails as a matter of law.  See Fultz, 470 Mich.

at 467.

Because plaintiff fails to allege any duties separate and distinct from the parties'

agreement, all of plaintiff's tort claims are subject to dismissal.

C.    RICO Claims [1]

Defendants argue that plaintiff fails to allege (1) the predicate acts of mail and wire

fraud, or (2) a RICO enterprise.

Section 1962(c) of Title 18 of the United States Code provides that:

It shall be unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or indirectly, in the conduct of
such enterprise's affairs through a pattern of racketeering activity or
collection of unlawful debt.

18 U.S.C. 1962(c).  To prevail on a RICO cause of action, plaintiff must establish "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Moon v.

Harrison Piping Supply, 465 F. 3d 719, 723 (6th Cir. 2006) (quoting Sedima, S.P.R.L. v.

Imrex Co., Inc., 473 U.S. 479, 496 (1985)).  "Racketeering activity" is any act that is

_____

[1] Plaintiff has abandoned its RICO claims under 18 U.S.C. § § 1962(a) and (b)
as it offers no response to defendants' argument that plaintiff has failed to state a claim
under RICO sections 1962(a) and 1962(b).  See Defs.' Mot. to Dis. at 14-18.  Plaintiff's
response argues only that it "sufficiently pleaded its RICO claims pursuant to 18 U.S.C.
§ 1962(c) and 18 U.S.C. § 1962(d)."  Plf.'s Resp. at 19.  Thus, plaintiff has abandoned
its RICO claims under 18 U.S.C. § § 1962(a) and (b).  See Mekani v. Homecomings
Fin., LLC, 752 F. Supp.2d 785, 790 n. 2 (E.D. Mich. 2010) (when a plaintiff fails to
respond to a motion to dismiss a claim, "the Court assumes he concedes this point and
abandons the claim.").

indictable under certain enumerated federal criminal statutes.  18 U.S.C. § 1961(1)(B); Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F. 3d 315, 322 (6th Cir. 1999).  RICO requires at least two acts of racketeering activity within a period of ten years. See 18 U.S.C. § 1961(5).

"To allege a violation of the mail fraud statute, 18 U.S.C. § 1341, plaintiff must allege that the (1) defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with specific intent to deceive or defraud.  See Jackson v. Sedgwick Claims Management, 2010 WL 931864, *27 (E.D. Mich. March 11, 2010) (quoting Central Distributors of Beer, Inc. v. Conn., 5 F. 3d 181, 183-84 (6th Cir. 1993)). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money."  Heinrich v. Waiting Angels Adoption Servs., Inc., No. 09-2470, 2012 U.S. App. LEXIS 2390, *15 (6th Cir. Feb. 7, 2012) (citing United States v. Jamieson, 427 F. 3d 394, 402 (6th Cir. 2005)).

The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." Hall v. Witteman, 569 F. Supp. 2d 1208 (D. Kan. 2008). Specifically, 18 U.S.C. § 1343 provides that "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs,

signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 1343.

"When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Heinrich, 2012 U.S. App. LEXIS 2390, at *15 (citing Frank v. Dana Corp., 547 F. 3d 564, 570 (6th Cir. 2008)).

Here, plaintiff's RICO claims do not allege fraudulent activity, rather plaintiff claims that defendants billed plaintiff for tax related services at a rate that was not agreed to by the parties.  However, sending billing invoices which erroneously apply a charge for tax related services under the terms of a contract does not amount to fraud.  See Blount Financial Services, Inc. v. Walter E. Heller, 819 F.2d 151, 152-53 (6th Cir. 1987) ("Sending a financial statement which misconstrues the prime rate provided by the terms of the contract may breach the contract but it does not amount to a RICO mail fraud cause of action."); see also Kevelighan v. Trott & Trott, P.C., 771 F. Supp. 2d 763, 773 (E.D. Mich. 2010) ("It is insufficient . . . to transmute claims sounding in contract into RICO claims by simply appending the terms 'false' and 'fraudulent.')  Plaintiff's argument that mail and wire fraud can constitute predicate acts of racketeering activity for RICO purposes does not save plaintiff's claim from dismissal.   While plaintiff is correct that mail and wire fraud are predicate acts under RICO, plaintiff is still required to plead a viable fraud claim specifying the fraudulent statements, the identity of the speaker, where and when the statements were made, and explain why the statements were fraudulent.'" Heinrich, 2012 U.S. App. LEXIS

-10-

2390, at *15.  Plaintiff has failed to plausibly allege the predicate acts of mail and wire fraud, therefore its claim under § 1962(c) fails.

Plaintiff's RICO claim under § 1962(c) also fails because it failed to plead the existence of an enterprise.  An "enterprise" includes "any individual, partnership, corporation, association, or legal entity, and union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Therefore, an enterprise under RICO "encompasses both legal entities and illegitimate associations-in-fact." Russello v. United States, 464 U.S. 16, 24 (1983).  In Boyle v. United States, 129 S. Ct. 2237 (2009), the Supreme Court held that an association-in-fact enterprise must have three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Id. at 1276.  However, the group need not "have a hierarchical structure or a 'chain of command'; . . . a name, regular meetings, [or] dues."  Id. at 2245.  The group "must function as a continuing unit and remain in existence long enough to pursue a course of conduct . . . ." Id.

Here, defendants did not associate for the common purpose of engaging in mail and wire fraud.  An enterprise exists within the meaning of RICO only where "a group of persons [has] associated together for the common purpose of engaging in a course of conduct." Boyle, 129 S.Ct. at 2243 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  Defendants were associated as a business and plaintiff merely asserts that "defendants were an enterprise affecting interstate commerce."  Compl. at ¶ 54.  In fact, plaintiff acknowledges that it "does not allege that the corporate [or individual] Defendants existed only to engage in this illegal common purpose," and they "had legitimate business

-11-

pursuits," and "already knew each other and already worked together." Resp. Br. at 19-20. Plaintiff's complaint fails to allege that the defendants associated for a common purpose to engage in racketeering activity. For this reason also, plaintiff fails to allege a viable claim under § 1962(c).

As to plaintiff's RICO conspiracy claim, defendants correctly argue that because plaintiff has failed to state a violation under RICO, plaintiff's conspiracy claim under RICO fails as a matter of law. See Craigshead v. EF Hutton & Co., 899 F. 2d 485, 495 (6th Cir. 1989) ("Plaintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts."); AK Steel Corp. v. USW, 2002 U.S. Dist. LEXIS 19676, *24 (S.D. Ohio 2002) ("A conspiracy claim under 18 U.S.C. § 1962(d) cannot survive a motion to dismiss if the pleadings do not also state a substantive RICO claim for which relief may be granted.").

IV.     Conclusion

Accordingly,

Defendants' motion to dismiss [#9] is GRANTED.

This cause of action is dismissed.

SO ORDERED.

Dated:  August 3, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 3, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk